### DARTMOUTH.

Three ballots having been found in the ballot-box, bearing the name of the same candidate, and so folded and doubled together, as to satisfy the selectmen that they were all put into the box by the same person, the selectmen thereupon rejected two of them and counted the third; and there being no evidence to contradict the conclusion of the selectmen, or to impute any unfairness to them, the house refused to set aside the election on the ground of such rejection.

The intention of a voter, testified to by himself, as to his residence, is to be taken as conclusive, unless impeached.

THE election of Thomas K. Wilbur, returned a member from this town, was controverted by William B. Mason and others, on two grounds, first, because the whole number of votes given in at the election, when the member was supposed to be elected, was reported by the selectmen to be six hundred and fifty-eight, necessary to a choice three hundred and thirty; and that the member returned had the last mentioned number; whereas, in truth, the whole number of votes was six hundred and sixty-one; and the selectmen, in counting the votes, threw out and did not count three lawful votes, which were not given for the sitting member, but for another person; second, because the selectmen received a great number of illegal votes given for the sitting member, by persons, naming six, who were not qualified voters.

The committee on elections, to whom the petition was referred, made a report thereon, accompanied by a statement of the evidence, of which, it is only necessary to give extracts

59

from the testimony of three of the selectmen, relative to the first point, namely, the rejection of three votes.

William Barker, who was one of the selectmen, and present at the meeting, testified as follows :—

"In assorting the votes, perhaps we had assorted one-third of them, when I discovered three votes connected very closely together. I can show the committee the form of them. [Here the witness described to the committee the manner in which they were doubled.] They had the appearance of two votes when I first took them up. I took them up to look for the name on the vote. The first one was for Mr. Potter. I took that one off. I then looked at that remaining in my hands to see the name. Not seeing it very plain, I turned it over. I then suspected there were two votes. They stuck together, and I used considerable 'sucking' with my fingers, in order to get them apart. The corner of the whole was doubled over. They were all for William Potter. I showed them to the other selectmen. Mr. Packard took them, and laid them out on the board for future consideration.

We proceeded on, and directly I discovered two votes. They were twice doubled. [Here witness showed to the committee the mode in which they were doubled.] When the other ones were separated, one of the selectmen said: 'If you find any others, hold them up so that people can see them.' When I found them, I held them up, and said, 'What do you say to them?' Mr. Daniel Howland said, 'It is a rascally piece of work.' I then said, speaking to the other selectmen, what shall I do with them? Mr. Daniel Howland said, 'Do what you have a mind to with them.' They were then laid on the board with the other three. I examined to see for whom they were, and they were all for Mr. Potter.

We went on to finish sorting the votes. As we sorted them, Mr. Wilbur's were put into a ballot-box, and Mr. Potter's into a hat, and the three scattering votes into another hat. We then turned the Wilbur votes out of the box on to the board.

We took the three votes, when we had done sorting, and before we commenced counting, and put one of them into the hat—and the two votes, and put in one of them. Then we turned the votes out of the box on to the table, and proceeded to count. Mr. Daniel Howland interrupted us very much in counting. Mr. Wanton Howland said, 'You count and count loud, and I'll look over you.' I counted so, and when I counted 141 or 2, or something like that, Mr. Daniel Howland would say 43; and others seemed to interfere very much. When I had got through with counting Mr. Wilbur's votes, the number was given to Mr. Packard, the town clerk, and he took them down.

Upon cross-examination, the witness testified: I did not see any person deposit on the slide of the ballot-box more than one vote. I did not see any one put into the ballot-box anything which made it necessary that I should examine him on the spot, because I had the check list and Capt. Howland had the box. I saw something which called my attention to the fact, that it was attempted to put in more than one vote. I saw Mr. Howland when he spoke to Peleg Slocumb; he said to him, says he, 'You are too old a man to put in so many votes.' He had five or six in his hand. He went to the box, and Capt. Howland pressed his hand between the votes and the box, and prevented him from voting. I saw nothing else of the same kind. I don't know whether Mr. Slocumb voted afterwards or not.

I rejected the two votes because they were folded in such a way, that it appeared that they were put in by one man. I made my determination solely on their appearance.

I decided on the three votes on the same evidence; have no particular knowledge of the course pursued by Capt. Howland in pressing down the votes."

Wanton Howland, also one of the selectmen, testified as follows :—

"In sorting the votes, we found six written votes among the others, and I knew two of them to be Wilbur's votes, for I wrote them myself; the other four I concluded then were scattering votes. On examining them, however, I found one of them to be for Mr. Potter, and three for Mr. Anthony ; and when we were assorting the votes, Mr Barker held up a parcel of votes—very square—and says to me, ' What shall be done with these votes ?' He laid them down by themselves. He still continued to count, and soon took up another bunch of votes, and says, ' Here is another bunch of votes stuck together.' I observed to him it was best to put them with the others till we got through. We went on and finished sorting the votes.

The next thing was, what disposition shall be made of these two bunches of votes ? My first impression was, that we should throw them all aside; but Mr. Packard said it was best to put in one from each, after satisfying ourselves that they were put in by one man, and to that all agreed.

I was satisfied then, and am now, that each parcel was put in by one man. Have not any doubt of it any more than if I had seen them. They were all for Potter ; the two votes were faced together. There was only one vote in the whole that the name was visible on ; that was the first one in the parcel of three, the two under ones in parcel three, and the two others were each faced together. They were so put together that they could not possibly have got together in the box. The names were facing inwards on the two under ones of the parcel three, and the corners of three were turned down. The two votes were doubled in the middle and no name to be seen when Mr. Barker passed them to me. Mr. Barker examined them before I took them. When we commenced counting the votes, we threw three of those votes away, and put two of them into the hat with Mr. Potter's votes."

Henry S. Packard, who was one of the selectmen, and also town clerk, of Dartmouth, testified as follows :—

"I heard some one,—indeed, several voices at the same time,—saying, ' That man has got more than one vote.' I looked up, and Peleg Slocumb was in the act of voting. I saw Capt. Howland making a motion with his hand, and the votes were flying out of Slocumb's hand. There was then a shout in the meeting.

Mr. Barker spoke, as they were sorting the votes, and said, ' Here are three votes that I believe come in together.' Capt. Howland said, ' Better lay them away till we get through sorting.' As he held them up, all three were a little parted, slipped by on one end. I said, ' Mr. Barker, if you find any more votes so, you ought to be particular to hold them up, and show them just as they are.' One corner was a little turned up as he laid them on the table ; I could not see it in his hand. Mr. Barker then held up two more ; they were doubled together, and appeared with a corner turned up straight, and as if they had been doubled down.

Upon cross examination the witness testified ; I give my description of the votes as they appeared to me at the time. I observed that, ' We will take two and throw away three votes.' I did this on the ground that every person was entitled to one vote, and was satisfied from their appearance that they were put in by one man."

The committee concluded their report as follows :—

" It will be perceived, that the petitioners allege two reasons in support of their petition: first, that the selectmen threw out three votes which ought to have been counted against the sitting member; second, that persons not qualified voters were permitted to vote.

With respect to the first, the committee observe, that it will be perceived, by reference to the testimony of several of the witnesses, that, in assorting the votes, Mr. Barker, one of the selectmen, took from the pile of votes a parcel of three votes, folded together; that he called the attention of the other selectmen to it at the time, and that the parcel was laid aside for future consultation; that soon afterwards he found a parcel of two votes doubled together; that these also were shown to the selectmen, and to the bystanders, and were laid aside for the same purpose; that after the selectmen had finished sorting the votes, and before they proceeded to count them, these two parcels were examined; and they determined, unanimously, that three of the votes should be rejected, and two, one from each parcel, be counted; and three were rejected and two counted.

With reference to the conduct of the selectmen in this regard, the committee observe that there can be no question, that if there was full and satisfactory evidence that the three votes were cast by one man, two ought to have been rejected; and so if the two were cast by one man, one of them was properly rejected. The evidence to show these facts must of necessity often be, and in this case was, derived from the appearance of the ballots at the time. It is difficult to describe these appearances to the satisfaction of those not eye-witnesses. The committee believe that much, in these cases, is to be trusted to the judgment, integrity and good common sense of the selectmen. It is to be presumed that their judgment is correct, and the burden of proof is upon those who would question the correctness of that judgment. In this case there is not the slightest imputation upon their candor, fairness and deliberation. We feel safer in relying upon the judgment of such men in such a case, than upon our own impres-

sions ; and although we adhere strictly to the general principle, that it requires the most conclusive and satisfactory proof of double voting, to justify the rejection of any vote ; that a presumption of fraud is not sufficient, but that the selectmen must be satisfied, at the time, beyond all reasonable doubt, of the existence of fraud ; yet, we believe, in a case where there is no fraud imputed to the selectmen, we may safely confide in their judgment, and leave the responsibility of deciding the question of double voting with them.

In respect to the second reason alleged by the petitioners, the committee are of opinion, that the burden of proof was upon the petitioners, to show that the persons whom they alleged had voted illegally were not legal voters ; and that the testimony of the witnesses themselves, as to their intention of residence, unless impeached, is to be taken as conclusive. The committee have examined each case with care, and cannot find satisfactory evidence to invalidate the vote of any one.

Wherefore, the committee recommend that the petitioners have leave to withdraw their petition."

One member of the committee, (Mr. *Kellogg*,) dissenting from this conclusion, made a minority report as follows :—

" The petitioners allege that the selectmen declared the whole number of ballots to be 658 ; and that Wilbur had a majority of them, viz.: 330, whereas, in truth, the whole number was 661, and Wilbur's ballots were less than a majority.

The petitioners also allege, that six of Wilbur's ballots were cast by as many different individuals not qualified to vote ; but, in the opinion of the undersigned, neither of the six votes is invalidated by the testimony.

The testimony of the selectmen supports the first allegation, and they admit that Mr. Wilbur was not elected, if three votes against him, which were thrown under the table, ought to have been counted. The selectmen were of opinion, from the appearance of these three votes, that they were surreptitiously cast.

The majority of the committee hold this opinion of the

selectmen (in the absence of any charge of fraud against them) conclusive; and that the house is thereby precluded from inquiring, whether the three rejected votes were spurious or genuine. From this opinion the undersigned, with great deference to his colleagues on the committee, is constrained to dissent. The house is declared, by the constitution, to be the judge of the 'elections' of its members. The first step, the house takes in the discharge of this duty, is to investigate the contents of the ballot-box, at the time the polls were closed. As in other cases of judicial investigation, the house must do it, not by personal inspection, but by the testimony of eye-witnesses. And the undersigned insists, that no barrier can be raised between the house and the ballot-box. The acts and judgments of the selectmen, affecting the election, are all subject to revision by the house. Their errors in rejecting votes cast, as well as their errors in refusing to receive votes, may be corrected. In either case, they must depend, not on the purity of their intentions, but on the judgment of the house, for their justification.

In the opinion of the undersigned, the rejection of the three votes from the count was wholly unjustifiable. True, the law makes the selectmen the guardians of the purity of the ballot-box. But it points out the mode in which they may exercise this guardianship, and, by inference, forbids them from adopting any other mode. They shall make the voters deposit their votes 'open and unfolded.' If they enforce this provision, the presumption is, that the purity of the ballot-box is secured. Capt. Wanton Howland, chairman of the selectmen, who held the box, testifies, that 'he knew what the law required of him, and that it was his purpose to execute [it] in regard to every voter, and that he called upon them often to bring in their ballots open. That he noticed the votes as they came in, with a view to see if any were doubled, but that he saw none.'

Henry S. Packard, another selectman, and town clerk of Dartmouth, testifies, that 'he was aware of the law in regard to bringing the ballots in open, and, so far as he was concerned, that law was enforced.'

The selectmen having done thus much, the undersigned thinks all the ballots in the box should be presumed genuine till proved spurious, 'innocent till proved guilty,' in accordance with a very precious maxim of law.

The undersigned submits to the house, that the evidence scarcely raises a suspicion against two of the rejected votes, and that, in regard to the other rejected vote, the evidence does not by any means reach the legal rule of excluding all reasonable doubt as to its spuriousness.

The undersigned thinks that it would be very dangerous, for the house to sanction the rule recommended by the majority of the committee, that the good intentions of the selectmen should shield their errors of judgment from correction by the house. He fears that such a ruling would enable selectmen, with very bad intentions, to disfranchise half of the citizens of the commonwealth with perfect impunity. The undersigned, therefore, recommends that the three rejected votes be counted, and the adoption of the following resolution : —

Resolved, That the seat of Thomas K. Wilbur be declared vacated."

The house agreed to the report of the committee,[1] and the petitioners accordingly had leave to withdraw.